IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Applicant,<br><br>v.<br><br>AEROTEK, INC.,<br><br>        Respondent. | Civil Action No. 15-cv-275<br><br>Judge Shadur |

**RESPONDENT AEROTEK, INC.'S OPPOSITION TO THE EEOC'S
APPLICATION FOR AN ORDER TO SHOW CAUSE WHY SUBPOENA
SHOULD NOT BE ENFORCED**

Respondent, AEROTEK, INC. ("Respondent" or "Aerotek"), by and through its attorneys, submits the following Opposition to the Equal Employment Opportunity Commission ("EEOC") Application for an Order to Show Cause Why Subpoena Should Not Be Enforced ("Application").

## **INTRODUCTION**

The EEOC's Application rests on misstatements of the underlying facts central to its self-directed investigation and a demand for information that is both beyond the reach of the Age Discrimination in Employment Act ("ADEA") and wholly out of proportion to the EEOC's claimed investigative objectives.

At issue is the EEOC's claim that it needs the names of all clients that have had a business relationship with 62 different Aerotek offices around the country for the last six years, as well as the name, date of birth, and personal contact information of each applicant and employee that Aerotek has referred to those clients for temporary staffing assignments,

regardless of their age. (Dkt. 7 at 1-2.) According to the EEOC, this information is necessary for it to investigate allegedly age discriminatory requests made by a tiny fraction of those clients – requests that the EEOC has apparently identified, but continues to refuse to disclose to Aerotek.

As an initial matter, the EEOC already possesses the date of birth information it claims Aerotek has refused to provide. Through data productions on March 17 and August 13, 2014, Aerotek has produced more than 1.1 million date of birth records. Aerotek has informed the EEOC of its misrepresentation of this fact, but the EEOC has not responded.

As to client names and employee names and contact information, the EEOC's subpoena bears little relation to the stated investigative purpose. Aerotek has produced the full text of more than 632,000 job requisitions it was asked to fill for all of its clients since 2009. In its Application, the EEOC claims to have reviewed these requisitions and identified "hundreds of distinct discriminatory client requests." (Dkt. 7 at 5.) The EEOC asserts the subpoena should be enforced to permit it "to continue investigating these individual acts of discrimination by interviewing potential witnesses and victims." (Dkt. 7 at 5-6, fn. 2). However, the subpoena seeks information related to hundreds of thousands of other clients and job requisitions that the EEOC has already concluded *do not include* allegedly "discriminatory client requests," as well as individuals who do not belong to the protected class.

The EEOC does not possess plenary authority to conduct investigations, but rather is cabined to information relevant to the investigation in order to prevent fishing expeditions. *EEOC v. United Air Lines, Inc*., 287 F.3d 643, 653 (7th Cir. 2002). Here, the EEOC's own investigation identified a small universe of alleged "discriminatory client requests" involving a small number of clients. The subpoena should be tailored to accomplish the narrow line of

investigation the EEOC claims to be pursuing, rather than sweeping in wholly unrelated data about tens of thousands of clients and hundreds of thousands of applicants and employees. To mandate the production of wholly unrelated information regarding uninvolved clients, candidates and employees would sanction a broad and unjustified "fishing expedition" and unnecessarily jeopardize Aerotek's client and employee business relationships.

For these reasons, and as explained below, the Application should be denied.

## BACKGROUND

### I. AEROTEK

Aerotek is engaged in the business of supplying, on a contract basis, temporary staffing services to its various clients. (Declaration of Andrew Scroggins ("Scroggins Decl.") ¶ 2, attached as Exhibit 1.) Aerotek sources, screens, recruits, and assigns its temporary employees, also known as contract employees, to clients based upon those clients' work-related criteria and requirements to work for varied lengths of time at a client's premises and under their direction and supervision. *Id*.

The Company has many offices around the country and employs a large workforce. *Id*. ¶¶ 3-4. Since 2008, Aerotek has operated more than 300 offices and issued more than 250,000 W-2s annually. *Id*.

### II. THE EEOC'S SELF-INITIATED INVESTIGATION

Since 2008, just three EEOC charges alleging age discrimination have been filed against Aerotek in the Chicago-area. *Id*. ¶ 5. The EEOC dismissed two of them in 2012 without taking any action. The third, which remains open, was filed by a former employee who was 28 years old at the time her charge was filed and thus not even in the protected age group – individuals age 40 and older. *Id*.

The instant Directed Investigation under the ADEA was initiated by the EEOC in 2013, on grounds that the EEOC refuses to disclose to Aerotek. *Id*. ¶¶ 6, 11, 22, 24. By letter dated August 19, 2013, Aerotek's president was informed that "the EEOC has scheduled an investigation of [Aerotek] to determine its compliance under the ADEA with respect to your organization's recruitment, hiring and placement of individuals at all facilities in the United States (i.e., your organizations facilities and facilities owned and/or operated by clients of your organization) during the time period of January 1, 2009 to the present." (Dkt. 7-1 at 7-8.) The EEOC's investigator has characterized "this investigation not as a set of allegations to be rebutted but rather as an opportunity for Aerotek to work with EEOC to demonstrate its compliance with the ADEA." (Dkt. #7-1 at 12.) However, Aerotek's efforts to work with the EEOC have been met with silence. (Scroggins Decl. ¶¶ 11-12, 24, 30.)

### III. AEROTEK'S DOCUMENT AND DATA PRODUCTIONS

In connection with its Directed Investigation, the EEOC has issued several requests for information ("RFIs") and two document subpoenas. *Id*. ¶¶ 6, 10, 12, 18, 23. In response, Aerotek has produced more than *500 pages of documents* and four databases containing nearly *2 million rows of data*. *Id*. ¶¶ 15-17, 19-20. Three data productions, described below, are particularly relevant to the Application.

### A. AEROTEK PRODUCED DATA THAT IDENTIFIES ALL ACCOUNTS AND CONTRACT EMPLOYEES RELATED TO ILLINOIS LOCATIONS FOR MORE THAN FIVE YEARS.

On March 4, 2014, the EEOC issued Subpoena No. CH-14-026, which included the following Request:

> **Request No. 1. For all individuals Respondent referred from Respondent's facilities in Illinois for employment at Respondent's clients during the time period of January 1, 2009, to the present, an MS Access 2007 database with an 'ACCOUNTS' Table with the following fields containing information on each position for which each above described individual was referred:**

- **ACCOUNT_NAME**
- **ACCOUNT_CITY**
- **ACCOUNT_STATE**
- **CLIENT_JOB_TITLE**
- **CREATED_DATE**
- **REQ_NAME**
- **REQ_GUID**
- **OFFICE_NAME**
- **DIVISION**
- **FIRST_NAME**
- **LAST_NAME**
- **ADDRESS_LINE1**
- **ADDRESS_LINE2**
- **CITY**
- **STATE**
- **ZIP**
- **CANDIDATE_ID**
- **HR_EMPL_ID**
- **STATUS**
- **INTERNAL_COMMENT**
- **DATE_OF_BIRTH**

(Dkt. 7-1 at 14-16.)

In response, Aerotek produced all of the requested information in a database Bates numbered DIR_INV000500.[1] (Scroggins Decl. ¶ 15.) The database included 115,065 rows of data, more than 85,000 of which included the candidate or employee's date of birth.

### B. AEROTEK PRODUCED DATA THAT IDENTIFIES ALL CLIENT REQUISITIONS REQUESTED BY CLIENT ACCOUNTS NATIONWIDE FOR MORE THAN FIVE YEARS.

The EEOC's March 4, 2014 subpoena also included the following Request:

**Request No. 2. For all job requisition requests by clients of Respondent nationwide for the time period of January 1, 2009, to the present, an MS Access 2007 database with a "JOB_DESCRIPTIONS" Table with the following fields containing information for each job requisition:**

- **REQ_GUID**
- **REQ_NAME**
- **INTERVIEW_INFO**
- **JOB_DESCRIPTION**

(Dkt. 7-1 at 14-16.)

In response, Aerotek produced all of the requested information in a database Bates numbered DIR_INV000502.[2] (Scroggins Decl. ¶ 17.) The database was comprised of a single

---

[1] The data was organized to correspond to the subparts described in the subpoena, with just two exceptions. First and last name were concatenated into a single field ("NAME"). Second, name and address fields were preceded by an "R_." (Scroggins Decl. ¶ 17.)

5

table titled "JOB_DESCRIPTIONS," with field headings that corresponded to the subparts described in the subpoena. *Id*. The table included *632,785 job requisitions*. *Id*.

With this production, Aerotek also informed the EEOC that a review of the database had unearthed a few isolated incidents of employees acting in a manner inconsistent with the Company's policies and practices with respect to client referrals, and requested the EEOC's cooperation to look into those situations and devise appropriate remedies. *Id*. Tellingly, the EEOC has never responded to Aerotek's March 31, 2014 request.

> **C. AEROTEK PRODUCED DATA THAT IDENTIFIES BY UNIQUE IDENTIFICATION ALL ACCOUNTS AND CONTRACT EMPLOYEES RELATED TO ALL LOCATIONS NATIONWIDE FOR MORE THAN FIVE YEARS.**

On July 30, 2014, the EEOC issued another RFI, which included the following Request:

**1. For all individuals who nationwide applied for employment with Respondent and were hired and/or assigned to work assignments at clients of Respondent for the time period of January 1, 2009, to the present date, provide the following information in an MS Access 2007 database.**

**a.) an "ACCOUNTS" Table (to accompany the "JOB_DESCRIPTIONS" table which has already been provided by Aerotek) with following fields containing information for each position for which each above described individual hired and or assigned to:**

- **ACCOUNT_NAME**
- **ACCOUNT_CITY**
- **ACCOUNT_STATE**
- **CLIENT_JOB_TITLE**
- **CREATED_DATE**
- **REQ_NAME**
- **REQ_GUID**
- **OFFICE_NAME**
- **DIVISION**
- **FIRST_NAME**
- **LAST_NAME**
- **ADDRESS_LINE1**
- **ADDRESS_LINE2**
- **CITY**
- **STATE**
- **ZIP**
- **CANDIDATE_ID**
- **HR_EMPL_ID**
- **STATUS**
- **INTERNAL_COMMENT**
- **DATE_OF_BIRTH**

---

[2] The data was organized to correspond to the subparts described in the subpoena, with the same two exceptions applicable to DIR_INV000500.

6

(Dkt. 7-1 at 23-24.)

In response, Aerotek produced a database Bates numbered DIR_INV000505, comprised of a single table, titled "ACCOUNTS," that included 1,147,196 rows of data. (Scroggins Decl. ¶ 19.) In order to maintain the anonymity of candidates, employees, and client accounts, a unique employee identification number was provided in lieu of employee FIRST_NAME, LAST_NAME, ADDRESS_LINE1, ADDRESS_LINE2, CITY, STATE, ZIP, and CANDIDATE_ID, and a unique account identifications number was provided in lieu of ACCOUNT_NAME, ACCOUNT_CITY, AND ACCOUNT_STATE. *Id*.

In several pieces of correspondence to the EEOC, Aerotek implored the EEOC to conduct an analysis of the data produced to narrow the scope and burden of this nationwide investigation spanning six years, and including thousands of clients and hundreds of thousands of candidates and employees. *Id*. ¶ 29. The EEOC never responded to those entreaties. *Id*.[3] Aerotek learned that the EEOC had identified "hundreds of distinct discriminatory client requests" only upon receipt of the Application. Except for the three purported "examples" in the Application, the EEOC has not responded to Aerotek's subsequent requests to be informed of the requests the EEOC has identified. *Id*. ¶ 30.

## ARGUMENT

### I. AEROTEK HAS ALREADY PRODUCED DATE OF BIRTH INFORMATION FOR APPLICANTS AND EMPLOYEES TO THE EXTENT IT IS AVAILABLE.

The EEOC mistakenly asserts that Aerotek has not produced dates of birth where that information is available. To the contrary, on March 17, 2014, in response to EEOC Subpoena CH-14-026, Aerotek produced a database Bates numbered DIR_INV000500 that included

---

[3] In a separate matter which Aerotek is attempting to conciliate with the EEOC, the agency refused to identify the conclusions of its investigation and instead suggested that Aerotek review the information on its own and try to guess at the EEOC's concerns.

115,065 rows of data identifying each person that Aerotek had referred from its Illinois offices for placement with a client from January 1, 2009 through March 12, 2014. (Scroggins Decl. ¶ 12.) Dates of birth are included for more than 85,000 of those entries. *Id*.

On August 13, 2014, in response to a request for information, Aerotek produced a database Bates numbered DIR_INV000505 that included information from every Aerotek office across the country about each person referred for placement with a client from January 1, 2009 through March 12, 2014. (Scroggins Decl. ¶¶ 16-17.) The database included 1,147,196 rows of data identifying each person that Aerotek had referred from any of its offices nationwide for placement with a client from January 1, 2009 through March 12, 2014. *Id*. Dates of birth are included for more than one million of those entries. *Id*.[4]

Since Aerotek has already produced dates of birth where that information is available, the EEOC's request to "enforce" this aspect of its subpoena is moot and should be denied.

## II. THE EEOC'S SUBPOENA SEEKS INFORMATION THAT IS BOTH WELL BEYOND THE SCOPE OF THE ADEA AND GROSSLY DISPROPORTIONATE TO THE STATED OBJECTIVE OF THE AGENCY'S INVESTIGATION.

In its Application, the EEOC represents that its subpoena is an effort to focus its investigation. (Dkt. 7 at 5.) In reality, the information targeted by subpoena far exceeds what is necessary to accomplish this task and instead would enable an impermissible "fishing expedition." Among other things, the subpoena would sweep in information about candidates and employees below the age of 40 who cannot have claims under the ADEA. Likewise,

---

[4] In support of its Application, the EEOC submitted a copy of its request for this information. Dkt. 7-1 at 23-24. The second page of the document bears handwritten marks that were not present on the copy contemporaneously provided to Aerotek. *Id*. at 24. While this is not Aerotek's document, the handwritten check marks correspond to the data fields produced by Aerotek in response to the RFI. Among the fields marked is "DATE_OF_BIRTH." *Id*.

The EEOC also supported its Application with an email sent after Aerotek's production in response to the RFI. Dkt. 7-1 at 26-27. The email purports to identify data fields that the EEOC contends Aerotek has yet to produce. *Id*. at 26. Notably, "DATE_OF_BIRTH" is not listed as missing field. *Id*.

individuals who are not in the protected group also have no "relevant information" that could possibly contribute to an investigation of a pattern of age discrimination. (The EEOC does not and cannot suggest that the temporary employees at issue here are decision makers.) Any other information that these individuals might have would be beyond both the substantive scope of the statute at issue and beyond the scope of any appropriate ADEA investigation that the EEOC might conduct.

The EEOC launched its Directed Investigation a year and a half ago. (Dkt. 7-1 at 7-8.) Nearly one year ago, Aerotek produced a database of the full text of every job requisition it has been asked to fill, nationwide, since 2009—more than 632,000 requisitions in total. (Scroggins Decl. ¶ 17.) According to the EEOC, it reviewed that database and found "hundreds of distinct discriminatory client requests" at 62 locations and "must now investigate *these* discriminatory requests further." (Dkt. 7 at 5 (emphasis added).) Specifically, "EEOC intends to continue investigating *these individual acts of discrimination* by interviewing potential witnesses and victims, both those in the protected age category and those who are not but may have relevant information from having worked at these clients." *Id*. at 5-6, fn. 2 (emphasis added).[5]

The subpoena, however, is not focused on the potential witnesses and victims of the "hundreds of distinct discriminatory client requests" the EEOC says it has discovered. Rather, the subpoena seeks six years of information for every candidate, employee and client associated with the 62 locations where an allegedly discriminatory client requisition originated. In other words, it includes voluminous information related to clients and job requisitions the EEOC has already reviewed and deemed no longer to be of concern.

---

[5] The EEOC also states that it wants to investigate "whether Respondent made other discriminatory referrals." (Dkt. 7 at 5.) This statement makes no sense. Aerotek has produced all job requisitions since January 1, 2009 and identified all people referred to fill those positions. In other words, the EEOC already possesses the data it requires to analyze whether Aerotek made "other discriminatory referrals."

9

Simply stated, the alleged "distinct discriminatory client requests" relate to a very small fraction—less than a quarter of one percent—of all job requisitions produced by Aerotek. There is a straightforward way for the EEOC to accomplish its purported investigative purpose: identify the distinct client requests at issue so that Aerotek can produce information about these particular clients and the applicants and employees over the age of 40 who were referred for the positions at issue.[6] The EEOC has refused to take this approach.

A few additional points illustrate the disproportional nature of the EEOC's request:

- The EEOC purports to have identified "hundreds" of distinct requisitions warranting further review, yet it wants additional data related to 196,367 job requisitions, the text of which the EEOC has already reviewed. (Scroggins Decl. 25.)
- The EEOC purports to be concerned with no more than "hundreds" of client requests, yet it seeks the identity of 22,118 clients. *Id.*
- The EEOC purports to be concerned about whether alleged discriminatory language in "hundreds" of distinct requests may have been given effect to the detriment of some workers age 40 and over, yet it seeks information about 398,030 contract employees (a number greater than the total number of people employed by Aerotek in an average year). *Id.*
- The EEOC purports to be concerned with identifying "potential victims," yet the agency also seeks contact information for individuals who are below the age of 40 and thus do not have remedies under the ADEA.

The EEOC, unlike some other federal agencies, does not possess plenary authority to demand to see records. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64 (1984). Rather, the EEOC may exercise its investigatory power only to the extent relevant to the matter under investigation. *Id.* at 65. The "requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent 'fishing expeditions.'" *United Air Lines, Inc.*, 287 F.3d at 653. Courts do not permit investigations to proceed based simply on the whim and caprice of the EEOC because to do so "would require [courts] to disregard the Congressional requirement that

---

[6] The EEOC incorrectly claims that "Respondent Has Admitted to Discriminatory Client Requests." (Dkt. 7 at 6.) In a letter to the EEOC, Aerotek reported that it had identified a few instances where employees failed to comply with Company policies and practices. (Scroggins Decl. ¶ 17.) The EEOC never responded to Aerotek's request to speak further about these issues. *Id.* ¶ 19.

the investigation be based on the charge." *Id*. at 655. The EEOC bears the burden to show that the requested information is relevant to the charge. *Id*. at 652.[7]

The EEOC has not satisfied its burden in this case. The EEOC's subpoena includes a request for the last name, address, city, state, ZIP code, and telephone number of each temporary employee hired and/or assigned to work assignments at clients serviced out of 62 Aerotek offices over a nearly six year period. It also requests the name, city and state of all Aerotek client accounts serviced out of these 62 offices over the same period. The names and contact information for each employee and client have nothing to do with general ADEA compliance or an assessment of the referral and hiring practices of temporary employees. The information, if provided, would enable the EEOC to engage in an unwarranted inquisition of past and present employees and clients where there is absolutely no basis to do so.

To obtain enforcement of a subpoena, the EEOC is required to provide a "realistic explanation of the possible relevance of how providing the EEOC with [this] information. . . might assist it in resolving" its investigation. *United Air Lines*, 287 F.3d at 654. The EEOC's sole explanation is that it "intends to continue investigating" hundreds of *distinct* discriminatory client requests "by interviewing potential witnesses and victims." (Dkt. 7 at 5-6, fn. 2.) Aerotek was and is willing to provide appropriate information about these client requests if only the EEOC would identify them.[8] The EEOC's stated purpose does not justify disclosing information

---

[7] *See also EEOC v. BNSF Railroad*, 669 F.3d 1154, 1158 (10th Cir. 2012) (declining to enforce subpoena that sought plenary discovery); *EEOC v. Ford Motor Credit Co*., 26 F.3d 44, 47 (6th Cir. 1994) (EEOC does not have the right to subpoena "any material which EEOC deems relevant in its discretion," but rather must satisfy the Shell Oil relevancy test).

[8] In fact, with respect to the three examples the EEOC provided in the Application (Dkt. 7 at 2-3), the agency already possesses the data it claims to need to further its investigation. Specifically, by reviewing DIR_INV000500 and DIR_INV000505, the EEOC can identify the two Aerotek facilities and three client accounts at issue, as well as information about applicants and employees referred for placement at these same three client accounts. (Scroggins Decl. ¶ 28.)

11

about the tens of thousands of clients and hundreds of thousands of employees who have no association with the distinct allegedly problematic requisitions at issue.

Another district court declined to enforce an EEOC subpoena that sought specific identifying individual information, including contact information, in a context strikingly similar to that present here. In *EEOC v. McLane Company*, No. CV-12-615, 2012 WL 1132758 *1 (D. Ariz. April 4, 2012), as in the instant case, the EEOC exercised its authority to open a directed investigation under the ADEA and did so despite having no charging party. The *McLane* investigation was focused on whether an employment test had an adverse impact on an age-protected class. The EEOC in McLane served a subpoena seeking "pedigree information," i.e., the name, addresses and social security numbers of all test takers, so that it could contact the test takers to see if adverse action had been taken. McLane produced the information pursuant to the EEOC's subpoena, but in so doing identified employees and applicants by unique numbers, rather than by social security numbers and withheld individual contact information.

The district court denied the EEOC's application to enforce the subpoena as drafted. First, the court held that the EEOC had no congressional authority to seek the names, contact information, or social security numbers of people under the age of 40, since they did not qualify for relief under the ADEA. *Id*. at 3. The same rationale should apply in this instance.

Second, the court held that the information was not relevant to the EEOC's investigation of the charge. In *McLane*, the EEOC had issued an exceptionally broad notice of charge to McLane that "a nationwide investigation of all facilities owned and/or operated by [McLane] is being conducted under the" ADEA—a notice so broad that the court cautioned "such a broadly worded investigation risks eliminating the relevancy requirement entirely." *Id*. at 5 n.4. Despite that broad notice the court recognized that the EEOC's notice did not suggest it was investigating

12

any acts of discrimination against particular individuals, but rather was conducting an inquiry into the impact of a practice or policy. Accordingly, the court concluded that individual personal and confidential information was not relevant to that kind of investigation and instead raised concerns the EEOC intended to use the information as "a means of trolling for possible complainants, not merely for ADEA claims, but for Title VII claims as well." *Id*. at *5. The same rationale is equally applicable in the instant case. The potential for using the information sought to engage in a 'fishing expedition' or to troll for possible individual complaints of discrimination is certainly present here, particularly where there is no evidence of disparate treatment or even individual discrimination based on age.

Third, the court in *McLane* held that "asking for contact information for those people who could not state a claim for age discrimination suggests that the demand for information is too indefinite or has been made for an illegitimate purpose." *Id*. (internal citations omitted). Again, the same observation could be applied in the instant case.

Requiring the disclosure of identifying information concerning nearly 400,000 unknowing temporary employees and more than 22,000 clients, spanning 62 Aerotek offices is manifestly unjustifiable. Disclosure also opens the door for a disruptive and potentially damaging "fishing expedition" that invades the personal privacy and personal lives of Aerotek's employees and jeopardizes the fundamental on-going business relationship Aerotek enjoys with its clients. Indeed, the EEOC was denied similar information in *McLane* even though the EEOC had identified a particular test, practice or policy at issue—a greater showing than the EEOC has made in this instance, where no justification has been offered to support the request.

The EEOC attempts to minimize Aerotek's objections to the subpoena by pledging to maintain the information confidentially. (Dkt. 7 at 6.) However, the EEOC also says that it will

use the information to contact people. *Id*. at 5. Aerotek's concern is not that the EEOC will allow private information to become public but that the EEOC will contact employees who are not connected to the small number of distinct requisitions that the EEOC has identified, exposing them to unnecessary invasions of their privacy. In addition, disclosure of tens of thousands of client names jeopardizes the fundamental on-going business relationships that Aerotek enjoys with its clients.

The EEOC's dismissive attitude toward these issues ignores legitimate concerns over the agency's tactics in recent years. Another district court recently addressed EEOC misconduct during an investigation. In *EEOC v. HomeNurse, Inc*., 2013 WL 5779046 (N.D. Ga. Sept. 30, 2013), the court denied the EEOC's application for enforcement of an administrative subpoena on several grounds, including that the employer had already provided relevant information. The court also chastised the EEOC for its aggressive tactics, which included intimidating employees, demanding documents already produced, and ignoring the employer's requests to discuss the scope and relevance of the EEOC's requests. *Id*. at *3-4.

Even more recently, an employer has accused the EEOC of "relentless" efforts to solicit workers to join a lawsuit. *See EEOC v. United Health Programs of America, Inc.*, Civil Action No. 14-cv-03673 (E.D.N.Y.). (A copy of the employer's submission is attached as Exhibit 2.) In that case, the EEOC is alleged to have sent solicitation letters to *all* of the defendants' current and former employees, notifying the employees of the lawsuit, providing instructions to contact the EEOC, and offering the opportunity to join the case and potentially recover money. *Id*. Some employees also were contacted by the EEOC via phone. *Id*.[9] The EEOC continued to contact current and former employees even after the employer objected. *Id*.

---

[9] Additional examples of EEOC misconduct were detailed recently in Congress. *See* "EEOC: An Agency on the Wrong Track? Litigation Failures, Misfocused Priorities, and Lack of Transparency Raise

14

Aerotek's reluctance to disclose identifying information about tens of thousands of clients and hundreds of thousands of applicants and employees is not an idle concern. The EEOC has stated its intention to pursue these contacts, notwithstanding that the overwhelming majority of these clients and people are not connected in any way to the small number of distinct requisitions that the EEOC has flagged for further investigation. This is the very definition of a fishing expedition, and it has a strong potential to adversely impact Aerotek's relationships with its clients and employees.

## **CONCLUSION**

The EEOC has already received dates of birth for applicants and employees to the extent that information is in Aerotek's possession. The EEOC's request for identifying information for all of Aerotek's client accounts, applicants and employees linked to 62 Aerotek offices nationwide is disproportionate to the EEOC's stated investigative purpose. Accordingly, Aerotek respectfully requests that the Court deny the EEOC's Application.

Dated: February 13, 2015
        s/ Andrew Scroggins
        Thomas F. Hurka
        Andrew Scroggins
        Morgan, Lewis & Bockius LLP
        77 West Wacker Drive, Fifth Floor
        Chicago, Illinois 60601
        Tel: (312) 324.1000
        Fax: (312) 324.1001
        thurka@morganlewis.com
        andrew.scroggins@morganlewis.com

        *Attorneys for Defendant*

---

Concerns about Important Anti-Discrimination Agency," U.S. Senate Committee on Health, Education, Labor and Pensions, Minority Staff Report (November 24, 2014), available at http://www.help.senate.gov/. A copy is attached as Exhibit 3.

# CERTIFICATE OF SERVICE

I, Andrew Scroggins, an attorney, hereby certify that on February 13, 2015, a copy of the foregoing **RESPONDENT AEROTEK, INC.'S RESPONSE IN OPPOSITION TO EEOC'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY SUBPOENA SHOULD NOT BE ENFORCED** was electronically filed via the Court's CM/ECF system, which transmitted service of the same upon the following counsel of record for Applicant:

>Aaron DeCamp (aaron.decamp@eeoc.gov)
>John C. Hendrickson (john.hendrickson@eeoc.gov)
>Diane I. Smason (diane.smason@eeoc.gov)
>EQUAL EMPLOYMENT OPPORTUNITY
>COMMISSION
>500 W. Madison St., Suite 2000
>Chicago, IL 60661

/s/ Andrew Scroggins

DB1/ 82236014