In the

# United States Court of Appeals

### For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 15-1690

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                *Applicant-Appellee,*

*v.*

AEROTEK, INC.,

                                *Respondent-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-00275 — **Milton I. Shadur**, *Judge.*

ARGUED DECEMBER 11, 2015 — DECIDED MARCH 4, 2016

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* The Equal Employment Opportunity Commission ("EEOC") is investigating Aerotek, Inc., a staffing company, to determine if Aerotek or its clients are engaged in age-related employment discrimination. In the course of its ongoing investigation, the EEOC issued two administrative subpoenas to Aerotek seeking information

regarding the company's clients. Aerotek has partially complied with those subpoenas but refuses to supply the EEOC with all of the information it seeks. The district court granted the EEOC's application for enforcement of its subpoenas and Aerotek appeals. We affirm.

## I.

Aerotek is a staffing agency that supplies temporary workers to its clients. In August 2013, the EEOC began conducting a directed investigation to assess Aerotek's compliance with the Age Discrimination in Employment Act of 1967 (hereafter "ADEA" or "the Act"). *See* 29 U.S.C. § 621 *et seq*. In particular, the EEOC sought information regarding Aerotek's practices in recruitment, hiring, and placement of workers at all of the facilities owned and operated by Aerotek and/or its clients from January 1, 2009 to the present. EEOC also sought information about Aerotek's computerized files. The EEOC served a subpoena on Aerotek requesting for the period from January 1, 2009 to the present: (1) information about all persons that Aerotek referred from its Illinois facilities for employment at Aerotek's clients; (2) information regarding all job requisition requests by clients of Aerotek nationwide; (3) information about persons hired into internal positions at Aerotek's Illinois facilities; and (4) documents related to Aerotek's analysis of its workforce. Aerotek partially complied with the subpoena, producing some of the information sought in a database.

EEOC's initial review of that information revealed hundreds of discriminatory job requests by Aerotek's clients at 62

of Aerotek's 286 facilities.[1] For example, one request noted that the client and his employees were in their twenties and that "a person in their 40s or 50s would not be a cultural fit." Another client was looking for "young entergetic [sic] guys with some sports knowledge and good attention to detail." Still another sought a "Fresh College Grad." Following its review of this information, the EEOC issued another request for information about the individuals who were assigned to the company's clients including their names, dates of birth, contact information and the names of the clients to whom they were assigned. Aerotek again partially complied with the request, producing a generalized form of the information but excluding the names of the clients and the names and contact information for workers hired by those clients. In place of that information, Aerotek created a code system and supplied numerical identifiers for clients and workers. The EEOC asked Aerotek to provide that redacted information and Aerotek refused, stating it would not produce any of the information unless the EEOC indicated which specific clients and workers it intended to contact.

---

[1] Aerotek states that it has operated more than 300 offices across the country and has employed hundreds of thousands of people in temporary contract positions with its clients since 2008. The company also states that it produced data to the EEOC regarding its 286 offices. The EEOC represents that Aerotek has 226 offices. The record does not reveal which is the correct number but the discrepancy between the EEOC's stated number of facilities and the company's two numbers does not affect the outcome of the appeal. The EEOC has narrowed its request to the 62 facilities at which it identified potentially discriminatory requests.

4　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 15-1690

The EEOC then issued the subpoena at issue here, seeking the names of the clients and workers and contact information for the workers, but only for the 62 facilities where it had already identified discriminatory requests. Aerotek refused to comply with the subpoena and the EEOC sought enforcement from the district court. The court ordered Aerotek to comply with the subpoena. Aerotek then produced the names of the workers and their contact information but did not supply the names of the clients. The company sought modification of the district court's order, which the court denied after hearing argument on the motion. Aerotek then appealed from the district court's order but sought a stay pending appeal. The district court granted a partial stay pending an attempt at mediation. After the mediation produced no results, the court lifted its stay. Aerotek then moved for a stay in this court, which we denied. We also denied Aerotek's motion for reconsideration. At oral argument, Aerotek revealed for the first time that the company has now produced all of the requested client information to the EEOC, but wants the EEOC to return that data.

## II.

On appeal, Aerotek asserts that the district court erred in ordering the company to produce the names of more than 22,000 clients when the vast majority of those clients were not related in any manner to the hundreds of job requisitions that the EEOC identified as potentially problematic. Because of the broad nature of the request, Aerotek objects that the EEOC is engaged in a fishing expedition totally unrelated to the matter under investigation. The company contends that it may be ordered to produce only that information that is relevant to the

No. 15-1690                                                                 5

EEOC's inquiry. Clients who have not made discriminatory requests, the company contends, are not relevant. The company fears an unnecessary disruptive effect on its ongoing business relationship with its clients, and seeks reversal of the district court's order.

Because Aerotek has now produced all of the requested information, we must first consider whether the matter is moot. An appeal becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980); *Stevens v. Housing Auth. of South Bend, Ind.*, 663 F.3d 300, 306 (7th Cir. 2011). When a court's decision can no longer affect the rights of the litigants in the case before it, the case becomes moot. *Church of Scientology of California v. United States*, 506 U.S. 9, 12-13 (1992) (if an event occurs while a case is pending on appeal that makes it impossible for a court to grant any effectual relief to the prevailing party, the appeal must be dismissed as moot); *Stevens*, 663 F.3d at 306.

Although Aerotek has already produced all of the requested information to the EEOC, both Aerotek and the EEOC asserted at oral argument that the matter was not moot because the court could order the return of the information to Aerotek. We agree that, although the parties could not be returned precisely to the *status quo ante*, the court could fashion some meaningful relief in these circumstances, including ordering the return of the information or prohibiting the EEOC from contacting those of Aerotek's clients not involved in the already-identified discriminatory requests. *See Church of Scientology*, 506 U.S. at 12-13. The availability of a partial,

6　　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 15-1690

possible remedy is sufficient to prevent the case from being moot. *Church of Scientology*, 506 U.S. at 13. Although Aerotek did not specifically request this relief in its brief, at the time of briefing the company did not yet know that this court would also deny a stay pending appeal. Aerotek first asked for the return of the information at oral argument in this court. To the extent that the company waived that relief by not requesting it earlier, the EEOC waived the waiver by conceding that it would return the information if ordered to do so by this court and by urging the court to decide the issue on the merits. *United States v. Whitlow*, 740 F.3d 433, 439 (7th Cir. 2014) (when the government fails to argue that a point was not preserved and instead urges a court to decide an issue on the merits, the waiver is waived).

　　We turn then to the merits. We review the district court's decision to enforce an agency subpoena for abuse of discretion, and we review any factual determinations on which the ruling is based for clear error. *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002); *E.E.O.C. v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995). Questions of law are reviewed *de novo*. *United Air Lines*, 287 F.3d at 649. Subpoena enforcement proceedings are designed to be summary in nature. *United Air Lines*, 287 F.3d at 649; *E.E.O.C. v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987). And a district court's subpoena enforcement function is narrowly limited: in deciding whether to enforce, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1266-67 (7th Cir. 1982) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). *See also*

No. 15-1690                                                    7

*United Air Lines*, 287 F.3d at 649 (same); *Quad/Graphics*, 63 F.3d at 645 (collecting cases). Under this familiar formulation, known as the *Morton Salt* test, disclosure may be restricted where it would impose an unreasonable or undue burden on the party from whom production is sought. *Dow Chemical*, 672 F.2d at 1267. "[C]ourt assessments of whether disclosure would be burdensome and of what restrictions might be appropriate are decisions within the sound discretion of the trial court and should only be reversed for abuse of discretion." *Dow Chemical*, 672 F.2d at 1267.

Under these deferential standards, we conclude that the district court properly enforced the EEOC's subpoena. Section 626 of the Act authorizes the EEOC "to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter in accordance with the powers and procedures provided in sections 209 and 211 of" the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 626(a). Section 211 of the FLSA, in turn, provides the agency with broad authority to "investigate such facts, conditions, practices, or matters as [it] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter." 29 U.S.C. § 211(a). Section 209 of the FLSA incorporates the subpoena power of the Federal Trade Commission Act. 15 U.S.C. §§ 49-50. There is therefore no doubt that "the inquiry is within the authority of the agency." *Morton Salt*, 338 U.S. at 652.

On the question of the scope and relevance of the inquiry, the provisions that we have cited permit the EEOC to "investigate merely on suspicion that the law is being violated, or even

just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43. Aerotek's objection to the relevance of the information must be considered in this context of the EEOC's broad power to investigate on suspicion that the ADEA is being violated, without the necessity of bringing a charge. *See E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 701 (7th Cir. 2002) (the ADEA's grant of investigative authority to the Commission is not cabined by any reference to charges). As we noted above, the EEOC has already identified hundreds of discriminatory requests by Aerotek's clients, recorded in Aerotek's database. The EEOC states that it wishes to investigate whether Aerotek's clients also made discriminatory requests that were *not* recorded in the company's database. That inquiry obviously would be ineffectual if Aerotek refuses to reveal the names of its clients. *See E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984) (noting that the relevance requirement for the EEOC's investigatory authority is "not especially constraining," and has been regularly construed to give the agency access to virtually any material that might cast light on the allegations against the employer); *E.E.O.C. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011) (noting that *Shell Oil* articulated a generous standard of relevance for purposes of EEOC subpoenas whereby the agency need only satisfy a "not particularly onerous" burden to obtain virtually any material that might cast light on the allegations against the employer) (quoting *United Airlines*, 287 F.3d at 652). There is no support in the law or the facts for the proposition that the EEOC is somehow limited to investigating instances of discrimination that are actually recorded in

No. 15-1690 9

Aerotek's database.[2] The identification of the clients will allow the EEOC to investigate discriminatory activity that has not been recorded in the database, information that is clearly relevant to its investigation. The district court did not abuse its discretion in determining that the information sought was relevant to the EEOC's investigation.

In sum, the inquiry is within the authority of the EEOC and the information sought is clearly relevant to the agency's investigation of age-related discrimination. Aerotek makes no claim that the request is too indefinite. That leaves only the question of whether the production of this information would impose an unreasonable or undue burden on Aerotek. *Dow Chemical*, 672 F.2d at 1267. To establish that the EEOC's subpoena is excessively burdensome, Aerotek must show that compliance would threaten the normal operation of its business. *Quad/Graphics*, 63 F.3d at 648. The actual process of producing the data imposes little burden on Aerotek because the company maintains a database containing all of the requested information. In fact, Aerotek increased the burden on itself by creating a coding system to mask the identity of individuals and clients in its earlier non-compliant productions to the EEOC. Moreover, Aerotek has now produced the information and makes no claim that the process of producing the information was unusually difficult or costly. The company's only objection appears to be that production of this

---

[2] We reject without discussion the company's contention that the district court misapprehended the facts or the legal standards at issue. A review of the transcripts demonstrates that the court fully understood both the law and the facts.

10                                                                  No. 15-1690

information will harm its business relationships with its clients. But it provides no basis for this fear and speculation is inadequate to establish undue burden.

We therefore conclude that the district court did not abuse its discretion in ordering Aerotek to comply with the subpoena. The judgment of the district court is AFFIRMED.